■ SUSAN GRANT, Respondent, v LAWRENCE GRANT, Appellant. [651 NYS2d 199] —In a matrimonial action in which the parties were divorced by judgment entered January 4, 1991, the defendant appeals, as limited by his brief, from so much of an order of the Supreme Court, Nassau County (McCaffrey, J.), entered November 2, 1995, as denied his application for an award of damages sustained as a result of the plaintiff's failure to cooperate in the sale of the former marital premises and abide by the terms of the parties' stipulation of settlement.

Ordered that the order is affirmed, with costs.

The parties were divorced pursuant to a judgment of divorce entered January 4, 1991. That judgment incorporated the provisions of an agreement dated May 4, 1990, which required, *inter alia*, that the marital residence was to be sold upon the occurrence of any one of several stated events, including the plaintiff's remarriage. The agreement also contained a mechanism for setting a listing price which consisted, in descending order, of (1) the parties' agreeing to a price, (2) the parties' designating a broker who would determine the price, or (3) the price being determined based on the mean valuation placed on the house by five different brokers.

The plaintiff remarried in November 1992, triggering the requirement that the marital premises be sold. The property was not sold, however, and in January 1994 the defendant sought declaratory and injunctive relief on the ground that the plaintiff had failed to cooperate in the sale of the residence for approximately 14 months following her remarriage. He also sought a judgment awarding him "one half (1/2) fair market rental value for marital residence" on the ground that her failure to cooperate in the sale effectively ousted him from the

property, which he owned with her as a tenant-in-common. The plaintiff sought an award of attorney's fees.

On April 21, 1995, the defendant moved for an order directing the plaintiff to cooperate in the sale of the residence and sign a binder, and for damages. While that motion was pending, the marital residence was sold on September 6, 1995, and the parties reserved their rights to claim damages from one another.

We agree with the Supreme Court's determination denying the defendant's application for an award of damages. The agreement reflects an understanding that the plaintiff would have exclusive occupancy of the premises not only during the period preceding the events which, under the agreement would trigger the sale of the premises, but also during the period of time reasonably required to sell the home once the triggering event had occurred. In exchange, the plaintiff assumed the responsibility to pay the mortgage, taxes, insurance, and expenses relative to the marital home, subject to certain qualifications. The agreement's detailed mechanism for choosing a "listing" price reflects the parties' awareness of the reality that real estate cannot be evaluated or sold instantly, and that the speed of the sale is generally related to the asking price.

Under the circumstances outlined above, and other circumstances revealed in the record, the defendant was not ousted from the property so as to entitle him to one-half its rental value during the period of the alleged ouster (*see, Haberman v Haberman*, 216 AD2d 525; *cf., Borock v Fray*, 220 AD2d 637). The remarriage of a spouse in possession of the former marital premises has, on occasion, been described as constituting an ouster of the out-of-possession ex-spouse who is a tenant-in-common (*see, Borock v Fray, supra; Worthing v Cossar*, 93 AD2d 515). However, the defendant never sought to partition the property, but instead cooperated with the fixing of an exaggerated listing price as part of a joint effort to sell the house privately. The plaintiff should not be liable for damages owing to a delay that resulted largely from the parties' original overvaluation of the house.

We also agree with the Supreme Court that there is no issue of fact as to whether the plaintiff wrongfully impeded the parties' efforts to sell the house. The plaintiff's detailed affidavits, to which there was no adequate response, remove any possible issue of fact in this regard. The marital residence ultimately sold for $240,000 in September 1995. The sale price was more than $70,000 less than the parties' asking price of $312,000

when they listed the property with a broker in October 1993, almost $100,000 less than their asking price in July 1993, and significantly less than the two separate appraisals obtained by the defendant in December 1992 and March 1993. As noted by the Supreme Court, there was no "evidence that a bona fide good faith purchaser was ready, willing and able to purchase the premises at a higher price". The record establishes conclusively that the delay in the sale of the house was attributable to the parties' joint misassessment of the value of the property rather than to a failure to cooperate on the part of the plaintiff.

We have examined the defendant's remaining contentions and find them to be without merit. Rosenblatt, J. P., O'Brien, Thompson and Luciano, JJ., concur.